[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 28, 2010
JOHN LEY
CLERK

No. 09-14013
Non-Argument Calendar
_____

D. C. Docket No. 07-01080-CV-IPJ

DANNY MCLAIN,

Plaintiff-Appellant,

versus

LIBERTY NATIONAL INSURANCE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 28, 2010)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Danny McLain appeals the summary judgment in favor of Liberty National Insurance and against his complaints of wrongful termination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a), and the Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-22, and cancellation of his health insurance in violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1166(a).  We affirm.

## I. BACKGROUND

We divide our discussion of the background into three parts.  First, we discuss McLain's employment with Liberty National and the events that led to his termination.  Second, we discuss McLain's complaints about the alleged discrimination by Liberty National.  Third, we discuss the decision of the district court.

### 1. McLain's Termination by Liberty National

McLain was employed by Liberty National from 1976 until he was terminated on January 27, 2006.  In 1997, McLain was promoted to second vice president and worked in Alabama as assistant to the Director of Worksite Marketing, Mike Burns.  As a benefit of his promotion, McLain was awarded a company vehicle and four gasoline credit cards.

McLain shared his gasoline credit cards with others. In 1997, McLain gave an Exxon gasoline credit card to his wife, and in 2005, McLain gave a gasoline credit card to his mistress, Pam Smith, who worked in Tullahoma, Tennessee. McLain began his affair with Smith in 2003 while she was his subordinate. In 2004, McLain disclosed the affair to Tony McWhorter, the Chief Executive Officer and McLain's direct supervisor, and McWhorter reassigned Smith to a different regional vice president. McWhorter later promoted McLain to Director of Worksite Marketing and also named him a regional vice president.

In 2005, Robert Dobbs, the Vice President of Purchasing, noticed suspicious charges on McLain's gasoline credit cards, including what appeared to be "many trips" to Tullahoma, Tennessee. When Dobbs confronted McLain, McLain stated that he had used his credit card to purchase gasoline for his wife's car. Dobbs later submitted to his supervisor, Joe Simonetti, spreadsheets that recorded the suspicious charges on McLain's credit cards.

In October 2005, Simonetti, the Financial Officer for Liberty National, questioned McLain about the charges. McLain stated that he had a relationship with Smith and had given her a company gasoline credit card. Simonetti told

McLain that he would "get with" McWhorter, to which McLain responded that McWhorter knew about the affair.

In the middle of December 2005, Simonetti told McWhorter that McLain had misused company credit cards. McWhorter knew that McLain and Smith were having an affair, and McWhorter discussed with Simonetti whether McLain had incurred expenses in Tennessee for business travel or to visit Smith. McWhorter told Simonetti to instruct McLain to reimburse Liberty National for double the amount of the charges. When later questioned about the meeting, McWhorter testified that Simonetti did not tell him McLain had given Smith a credit card.

On December 16, 2005, Simonetti sent McWhorter an email about the amount owed by McLain. In the email, Simonetti alluded to the relationship between McLain and Smith:

> Tony,
>
> See attached file showing the calculation of the amount that Danny McLain should reimburse Liberty. I doubled the personal charges as you suggested. Let me know how you would like to proceed with Danny and the district manager involved.
>
> Joe

Simonetti attached to the email a spreadsheet that calculated the amount McLain owed for charges on his "Shell card." Although the email mentioned McLain's

4

personal charges, the email did not mention nor imply that McLain had given Smith a card.

McWhorter told McLain that he owed Liberty National $15,000, and McLain responded that the company had allowed his wife to use a credit card for years and he was following the practice of other company officials. McWhorter told McLain that he "should have known better," and McLain agreed to reimburse the company. In January 2006, McLain paid Liberty National.

In early January 2006, Liberty National hired Andy King as President and Chief Operating Officer, and Simonetti sent King an email about McLain's misuse of company gasoline credit cards. Simonetti told King that McWhorter had "talked with" McLain, who had "reimbursed the company $15,000," and Simonetti attached to the email the spreadsheet that calculated the amount McLain owed. King later discussed the situation with McWhorter.

On Friday, January 20, 2006, King told McLain that his department was being eliminated and King offered McLain a position as a regional vice president. McLain asked to retain his position, but King replied that it "wasn't in the cards for the future." The following Monday, McLain submitted to King and McWhorter a memo requesting to remain the Director of Worksite Marketing.

On January 27, 2006, McLain met with McWhorter and an attorney for Liberty National. McWhorter fired McLain for improperly using a company credit card. During the meeting, King instructed McLain's assistant, Tommy Graham, to clean out McLain's office.

On January 30, 2006, King hired Jay Csipkes as a regional vice president. Csipkes was 28 years old. Liberty National later formally eliminated the position of Director of Worksite Marketing.

*2. McLain's Complaint and Motion for Summary Judgment by Liberty National*

On June 8, 2007, McLain filed a complaint that Liberty National had discriminated and retaliated against him because of his age, 29 U.S.C. § 623(a); Ala. Code § 25-1-22, and violated the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1166(a). McLain also complained about tortious conduct by Liberty National that violated state law. McLain alleged that the reason proffered for his termination was a pretext for age-based discrimination.

Liberty National moved for summary judgment. Liberty National argued that it lawfully terminated McLain because he gave his company credit card to his girlfriend, who used it to make approximately $2500 in unauthorized purchases.

6

## 3. Decision of the District Court

The district court granted summary judgment in favor of Liberty National. The district court ruled that McLain failed to establish a genuine dispute about whether the reason proffered for his discharge was pretextual. The district court found that McLain failed to establish that McWhorter knew Smith had a credit card when McWhorter fined McLain or that King had terminated McLain because of his age. The district court rejected McLain's complaints that Liberty National had retaliated against McLain, violated his rights under the Consolidated Omnibus Budget Reconciliation Act, and violated state law.

## II. STANDARD OF REVIEW

We review de novo a summary judgment and review the evidence in the light most favorable to the nonmoving party. Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1203 (11th Cir. 2010). Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

McLain challenges the summary judgment in favor of Liberty National. McLain argues, using the framework established in McDonnell Douglas Corp. v.

<u>Green</u>, 411 U.S. 792, 93 S. Ct. 1817 (1973), that material questions exist about whether the reason proffered for his termination was pretextual. McLain also challenges the dismissal of his complaint under the Reconciliation Act, but because McLain provides nothing more than two references to the Act, we consider the issue abandoned. <u>See</u> <u>Singh v. U.S. Att'y Gen.</u>, 561 F.3d 1275, 1278 (11th Cir. 2009).

McLain argues that a jury could infer that McWhorter knew McLain had given Smith a company credit card based on the email from Simonetti to McWhorter, but we disagree. McLain admittedly does not know what transpired between Simonetti and McWhorter, and McWhorter testified that Simonetti did not divulge that McLain had given Smith a credit card. "An inference . . . must be drawn by reason from the facts on which it purports to rest." <u>Dreijer v. Girod Motor Co.</u>, 294 F.2d 549, 554 (5th Cir. 1961). Although the record establishes that McWhorter and Simonetti knew about McLain's affair with Smith, which prompted them to consider whether McLain had placed personal charges on his credit card to finance that affair, there is no evidence that McWhorter knew that McLain had given Smith a credit card. Simonetti's later email that Smith was "involved" does not provide substantial evidence that McWhorter knew McLain

8

had given Smith a credit card. McLain's argument to the contrary is based on "speculation, not inference." Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 791 n.15 (11th Cir. 1992).

McLain also argues that a jury could infer that McWhorter knew Smith had a credit card because McLain told McWhorter that McLain's wife had been permitted to use his credit card for years, but again we disagree. McLain admitted that he did not tell McWhorter about Smith's credit card. See Dreijer, 294 F.2d at 554. McLain also failed to present any evidence that would rebut McWhorter's testimony that he did not learn until later that Smith had a credit card.

Liberty National presented evidence that McLain was terminated because he gave his mistress a company card, and McLain failed to present evidence to establish that reason "is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981). The district court did not err by granting summary judgment in favor of Liberty National.

The summary judgment in favor of Liberty National is **AFFIRMED**.